FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 23, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JENNIFER C.,[1]

                    Plaintiff,

          v.

ANDREW M. SAUL, the Commissioner
of Social Security,

                    Defendant.

No.    4:20-CV-5047-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Jennifer C. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly determining that the impairments did not meet or equal Listing 11.02, 2) discounting Plaintiff's symptom reports, 3) failing to properly consider Plaintiff's functional capabilities in

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 13 & 14.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

the absence of alcohol use, 4) failing to properly consider lay statements, and 5) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 13, and denies the Commissioner's Motion for Summary Judgment, ECF No. 14.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied. [8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—

---

[7] 20 C.F.R. § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

considering the claimant's RFC, age, education, and work experience.[14] If so,

benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability

benefits under steps one through four.[16] At step five, the burden shifts to the

Commissioner to show that the claimant is not entitled to benefits.[17]

If there is medical evidence of drug or alcohol addiction (DAA), the ALJ must

then determine whether DAA is a material factor contributing to the disability.[18]

To determine whether DAA is a material factor contributing to the disability, the

ALJ evaluates which of the current physical and mental limitations would remain

if the claimant stopped using drugs or alcohol and then determines whether any or

all of the remaining limitations would be disabling.[19] Social Security claimants

may not receive benefits if the remaining limitations without DAA would *not* be

---

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496,

1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] 20 C.F.R. § 416.935(a).

[19] 20 C.F.R. § 416.935(b)(2).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

1

2

disabling.[20] The claimant has the burden of showing that DAA is not a material

contributing factor to disability.[21]

3

## II.    Factual and Procedural Summary

4

5

Plaintiff filed a Title XVI application, alleging a disability onset date of

January 1, 2018.[22] Her claim was denied initially and upon reconsideration.[23] A

6

video administrative hearing was held before Administrative Law Judge Marie

7

Palachuk.[24]

8

In denying Plaintiff's disability claim, the ALJ made the following findings:

9

10

- Step one: Plaintiff had not engaged in substantial gainful activity

  since January 1, 2018, the alleged onset date;

11

12

- Step two: Plaintiff had the following medically determinable severe

  impairments: chronic urinary tract infections, endometriosis, episodic

13

14

  migraines, depressive disorder with anxiety, alcohol abuse disorder,

  and alcohol induced mood disorder;

15

16

17

[20] 42 U.S.C. §§ 423(d)(2)(C); 20 C.F.R. §§ 404.1535, 416.935(b); *Sousa v. Callahan*,

18

143 F.3d 1240, 1245 (9th Cir. 1998).

19

[21] *Parra*, 481 F.3d at 748.

20

[22] AR 93.

21

[23] AR 106 & 123.

22

[24] AR 40-77.

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

- Step three: without alcohol use, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform medium work, if Plaintiff stopped alcohol use, with the following limitations:

  [Plaintiff] is unable to understand, remember, and comprehend at least simple, repetitive tasks; she is able to maintain concentration, persistence, and pace for two hour intervals between regularly scheduled breaks; she can adapt to occasional and routine changes; she can make only simple routine judgments; she cannot perform at a fast-paced production rate of pace.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as laundry worker II, order filler, and lab equipment cleaner.[25]

When assessing the medical-opinion evidence, the ALJ did not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding or medical opinion.[26] The ALJ found the opinion of testifying expert Jay Toews, Ed.D. persuasive, the opinions of state agency

[25] AR 19-26.

[26] AR 21 & 24-25.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1

2

3

consultants Norman Staley, M.D. and J.D. Fitter, M.D. somewhat persuasive, and the opinions of state agency psychological consultants Michael Regets, Ph.D. and Shawn Horn, Psy.D. unpersuasive.[27]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[28]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[29] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[30] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[31] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

---

[27] AR 21 & 25.

[28] AR 23-25.

[29] AR 1.

[30] 42 U.S.C. § 405(g).

[31] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

mind might accept as adequate to support a conclusion."[32] Moreover, because it is

the role of the ALJ and not the Court to weigh conflicting evidence, the Court

upholds the ALJ's findings "if they are supported by inferences reasonably drawn

from the record."[33] The Court considers the entire record as a whole.[34]

Further, the Court may not reverse an ALJ decision due to a harmless

error.[35] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

nondisability determination."[36] The party appealing the ALJ's decision generally

bears the burden of establishing harm.[37]

---

[32] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[33] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[34] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must

consider the entire record as whole, weighing both the evidence that supports and

the evidence that detracts from the Commissioner's conclusion," not simply the

evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th

Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such

evidence was not considered[.]").

[35] *Molina*, 674 F.3d at 1111.

[36] *Id.* at 1115 (quotation and citation omitted).

[37] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### IV.    Analysis

**A.    Step Three (Listings): Plaintiff establishes consequential error.**

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet or medically equal Listing 11.02, singly or in combination.

While Listing 11.02 addresses seizures, it is the most closely analogous listing for migraines.[38] Listing 11.02 requires that a migraine headache be "documented by detailed description of a typical [migraine headache], including all associated phenomena."[39] To be of equal severity and duration, Listing 11.02B requires the migraines occur at least once a week for at least three consecutive months, despite compliance with treatment. Listing 11.02D requires the migraines occur at least once every two weeks for at least three consecutive months, despite adherence to prescribed treatment, and the claimant must have a marked limitation in physical functioning or one of the four areas of mental functioning.

A claimant bears the burden of producing medical evidence that establishes all of the requisite medical findings that her impairments meet or equal a particular Listing.[40] If the claimant is alleging equivalency to a Listing, the claimant must proffer a theory, plausible or otherwise, as to how her combined

---

[38] HALLEX DI 24505.015(B)(7)(B) (example 2).

[39] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02.

[40] *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

impairments equal a Listing.[41] Though a claimant's burden to establish, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so."[42] However the ALJ is not required to state why a claimant fails to satisfy every criteria of the Listing if the ALJ adequately summarize and evaluates the evidence.[43]

Here, the ALJ found that Plaintiff's migraines were a severe impairment at step two of the sequential process (with and without alcohol use), but nonetheless concluded that they neither met or equaled a listed impairment, stating only: "There is no listing for endometriosis, migraines or urinary tract infections, and [Plaintiff's] impairments do not medically equal any other impairment. In making this finding, the [ALJ] considered listing 11.02."[44] This is the only time the ALJ discussed Plaintiff's migraines and related symptoms.

Plaintiff submits that the medical record demonstrates that her migraines meet or equal Listing 11.02, "as she suffers from migraines occurring at least once

---

[41] *See Lewis*, 236 F.3d at 514.

[42] *Id.* at 512.

[43] *See Gonzalezi,* 914 F.2d at 1200-01; *Lewis*, 236 F.3d at 512.

[44] AR 21.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

a week for at least three consecutive months, despite compliance with treatment."[45] The Commissioner argues Plaintiff "proffers no plausible theory as to how her impairments satisfied the specific criteria for any given Listing" but rather "simply points to records which outlined her subjective report of headaches."[46] The Commissioner also argues the ALJ found Plaintiff's subjective report to be inconsistent with the evidence of record.[47]

Here, the ALJ does not discuss Plaintiff's reported complaints or objective medical evidence associated with her migraines. Rather, when finding Plaintiff's symptoms inconsistent with the objective medical evidence, Plaintiff's statements, noncompliance with treatment, her weak work history, and activities of daily

---

[45] ECF No. 13 at 12 (referencing AR 602-605 (2/20/18: Plaintiff seen for worsening headaches, almost daily headaches, occurring 20 out of 30 days over the last month, with no relief from medication); AR 574 (4/11/18: Plaintiff reported headaches occurring more than 50% of the days, nausea, photophobia, rare vomiting, and occasionally seeing spots or halos of colors when most severe); AR 492 (8/21/18: Plaintiff reported frequent migraine headaches, occurring almost daily); AR 457 (9/27/18: Plaintiff received Botox for refractory headaches)).

[46] ECF No. 14 at 15.

[47] *Id.* (citing AR 23).

1

2

living, the ALJ only discussed evidence related to Plaintiff's vomiting in relation to

inconsistency with her weight gain, and Plaintiff's mental impairments.[48]

3

4

5

6

7

On this record, the Court is unable to meaningfully review the ALJ's Listing

denial. The record shows Plaintiff sought treatment for her migraines on multiple

occasions with reports of severe pain, proceeded by aurora consisting of blurry

vision and lights flashing, dizziness, vison problems, and photophobia, occurring at

least once a week.[49] The record also shows Plaintiff tried multiple medications to

8

9

10

[48] AR 23-25.

[49] AR 391(1/30/18: visited clinic for headache, most severe pain is 9 out of 10,

11

reports interfering with work, headaches are usually preceded by an aurora

12

consisting of blurry vision and lights flashing; neurologic symptoms include

13

dizziness, vision problems and worsening school/work performance, prescribed

14

Toradol at clinic because pain 9/10 and interfering with work and Naproxen for

15

patient to take along with Imitrex to help with acute migraine symptoms); AR 395

16

& 1935 (2/2/18: positive for activity change, photophobia, pain and itching with

17

eyes, positive for nausea and vomiting, referral for Botox); AR 602 (2/20/18:

18

Plaintiff being seen at request of Marja Adair, M.D. for evaluation and

19

management of migraines); AR 574 (4/11/18: visit neurology with complaints of

20

headaches); AR 541 (6/28/18: emergency room visit for dysuria and headache); &

21

AR 492 (8/21/18: reports migraines 20/30 days over the last month, symptoms

22

23

include nausea, rare vomiting, photophobia, seeing spots and colors when migraine

1

2

help with migraine pain (Gabapentin, Sumatriptan, Prophylaxis, etc.), before

trying Botox injections.[50]

3

4

5

6

7

Because the record shows complaints of migraine headaches occurring at

least once a week for multiple months, the ALJ should have discussed Plaintiff's

migraine headaches, in any part of her decision, in determining Plaintiff's

impairments did not meet Listing 11.02.[51] Remand is needed to properly consider

Plaintiff's migraines.

8

**B.      Plaintiff's Symptom Reports: The ALJ is to reconsider on remand.**

9

10

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her

symptom reports. Here, the ALJ found Plaintiff's statements concerning the

11

---

12

13

most severe); *see also* AR 363 & 391 (physical exam: tenderness of palpation of

bilateral forehead, head (left side) tonsillar adenopathy present).

14

15

[50] *See e.g.,* AR 385, 394 (prescribed/taking Gabapentin); AR 390,400

(prescribed/taking Sumatriptan); AR 391 (prescribed/taking Prophylaxis); AR 462,

16

17

484, 491, 512, & 540 (taking Rizatriptan for migraines); & AR 457 (received Botox

injection for refractory headaches).

18

19

20

21

22

23

[51] *See Lewis v. Apfel*, 236 F.3d 503, 512, 514 (9th Cir. 2001) (upholding a step-three

finding when the ALJ stated that the claimant did not meet a listing and found

that the claimant's epilepsy was controlled with treatment when the ALJ did not

recite the evidence supporting his conclusion under the "Findings" section of his

decision but discussed it elsewhere).

1

2

3

intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence, Plaintiff's own statements, noncompliance with treatment, weak work history, and activities of daily living.[52]

4

5

6

7

8

9

10

11

12

The ALJ's evaluation of Plaintiff's symptom claims and the resulting limitations fails to address many of Plaintiff's limitations. Having determined a remand is necessary to readdress Plaintiff's migraines under Listing 11.02, any reevaluation must necessarily reassess Plaintiff's subjective symptom claims. As to Plaintiff's reports of "binge drinking," the ALJ must more meaningfully explain how Plaintiff's "binge drinking" is inconsistent with Plaintiff's reported back pain, abdominal pain, vomiting, nausea, and migraine headaches when Plaintiff reported not drinking. On remand, the ALJ must carefully reevaluate Plaintiff's symptom claims in the context of the entire record.[53]

13

**C.      Other Steps: The ALJ must reevaluate.**

14

15

Plaintiff also argues the ALJ inadequately evaluated Plaintiff's functional capabilities in the absence of alcohol use, improperly rejected lay witness

16

17

18

19

20

[52] AR 23-25.

[53] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

21

22

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

1

2

3

4

5

6

testimony,[54] and erred at step five. Because the ALJ's evaluation of Plaintiff's functional activities in the absence of alcohol use and RFC were based on an erroneous weighing of Plaintiff's reported physical limitations, the ALJ on remand is to reevaluate if the limitations remaining after Plaintiff stopped using alcohol are disabling, reassess Plaintiff's symptom reports and lay witness testimony, and proceed with a new step-five analysis.

7

### D.    Remand for Further Proceedings

8

9

10

11

12

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[55] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[56]

13

14

15

16

[54] The ALJ did not discuss the third-party function report provided by Plaintiff's friend.

17

18

[55] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

19

20

21

22

23

[56] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

1

2       The Court finds that further development is necessary for a proper disability

3   determination. Here, it is not clear what, if any, additional limitations are to be

4   added to the RFC, if Plaintiff does not satisfy a listing. Therefore, the ALJ should

5   consider whether testimony should be received from a medical expert pertaining to

6   Plaintiff's impairments, and then consider any additional evidence presented, and

7   make findings at each of the five steps of the sequential evaluation process.

8                               **V.    Conclusion**

9       Accordingly, **IT IS HEREBY ORDERED**:

10      1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is

11            **GRANTED**.

12      2.    The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is

13            **DENIED**.

14      3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

15            REVERSING and REMANDING the matter to the Commissioner of

16            Social Security for further proceedings consistent with this

17            recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

18      4.    The case shall be **CLOSED**.

19      **IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

20  provide copies to all counsel.

21      **DATED** this 23rd day of February 2021.

22                          _____
                                    EDWARD F. SHEA
23                          Senior United States District Judge

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16